[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This vigorously contested dissolution matter came to the Court by writ and complaint of the plaintiff, Charles Jouver (hereinafter plaintiff/husband), dated September 5, 1990, against the defendant, Shannon J. Jouver (hereinafter defendant/wife), wherein the plaintiff alleges that the marriage had broken down irretrievably and claimed a dissolution of the marriage, custody of the two minor children and an equitable division of the property. The return of the sheriff indicates the defendant was served in hand on September 5, 1990 and she thereafter appeared by counsel.
An answer and cross complaint was filed by the defendant on September 12, 1990, wherein the defendant also claimed a dissolution of the marriage, custody of the minor children, alimony, and other related relief. Various interlocutory orders were entered by the Court in response to pendente lite motions of the parties. An attorney was appointed for the minor children. Family Relations Division of the court was ordered to be involved as to the questions of custody and visitation. The case was assigned for trial on May 8, 1992 before the Court at Norwich. The plaintiff and defendant personally appeared in court and were represented by counsel. Counsel for the minor children was present and participated in the trial.
There are two children issue of the marriage: Ericka C., born August 21, 1987; and Gary C., born September 9, 1989. The parties were married on May 27, 1989.
The defendant, a high school drop out, was 17 years old when Ericka was born. The plaintiff was then almost 21 years old and was attending college.
Under the temporary court orders, the defendant CT Page 6568 mother had custody of the two children at the time of trial and the plaintiff father had certain specified rights of visitation.
The plaintiff presented the testimony of his father, Charles Jouver, Jr., who described for the Court his observations of the relationship between the defendant and his son, the plaintiff, and between the defendant and the children. He described how he and his wife permitted the defendant and Ericka to live with them after she had been asked to move out of her father's house while their son was away at college. He had been in the Navy for 27 years prior to his retirement from the Navy and was employed at the time of the trial by a contractor to the Navy at Bath, Maine. He described the defendant's lack of work habits and lack of appreciation for his hospitality as the reasons for the rapid development of hostility between them. He acknowledged that he never actually sat down to talk with the defendant about the living arrangements and the amount of work assistance he and his wife expected her to contribute around the house; but he assumed that those matters would be evident to the defendant as a responsible 17-year-old mother living in his house. He indicated that he would be available to provide moral and financial support to his son if he became the primary custodian of the children and thought that to drive all the way down to Connecticut once or twice a month would not tax them "too much." On the other hand, the plaintiff's father testified that if the children were to move to South Carolina with the defendant, his resources would not permit him to go there to visit. On cross examination, the plaintiff's father admitted that he had provided $500 to assist the defendant to have an abortion in Virginia prior to the birth of the first child, Ericka, and he also admitted having slapped the defendant in the face while she lived with them under circumstances which he described.
The plaintiff testified on his own behalf. He indicated that he has lived in Connecticut for at least twelve months prior to the institution of the action. He testified that he first met the defendant in the summer of 1986 when he was enrolled as a student at the University of Maine. He testified that after the agreement that she have an abortion and the funding for the trip by his father, he was "upset" that she did not have an abortion. He claimed to be the primary caretaker of the child on 90 percent of the weekends when he came home from college and she turned the care of the child over to him. The defendant moved to be with the plaintiff in Bangor during his last year of school and was there employed evenings on occasion in a grocery store. CT Page 6569
The parties moved to Connecticut according to the testimony of the plaintiff before their son, Gary, was born. He worked at Electric Boat General Dynamics in Groton and he is still employed there. The plaintiff testified as to the details of various disagreements and disputes that arose between the parties, both as to their own relationship and because of his disagreement about the manner in which he claimed the defendant kept the household and cared for the children. The plaintiff testified about his concern for the children being located outside of New England and the possibility that they may he relocated to South Carolina if the defendant has custody since she has indicated an intention to move to that location. On the other hand, he would not guarantee that he plans to stay in Connecticut and has acknowledged having applied for employment and having interviews for the same outside of the State of Connecticut. He indicated he would move to Texas for employment if it was in their best interest.
On cross examination, the plaintiff acknowledged that he was upset when the defendant did not have an abortion and that the parties had "discussed" adoption after Ericka was born. He also acknowledged that he refused to sign the paternity papers for Ericka when she was born and that the defendant was the primary caretaker for the time that he was away from the family at school.
On cross examination, the testimony of the plaintiff relating to financial matters at times appeared to the Court to be less than forthright.
The plaintiff is a college graduate who was born on September 12, 1966.
The plaintiff acknowledged that there was some "pushing and shoving" between he and his wife during the marriage but denied that at any time he sabotaged or disabled the defendant's car to limit her opportunity for the use of the same.
The plaintiff also offered the testimony of Mrs. Sandra Jouver who is the mother of the plaintiff. In her testimony, she elaborated upon the defendant's unwillingness to contribute to household chores while living with the family and gave her opinion as to the defendant's ambition, cleanliness and attitude.
The defendant testified on her own behalf that her view of her relationship with her mother-in-law was that it CT Page 6570 had been good. She testified that her father-in-law had been physically abusive to her three times and had hit her in the face twice. She testified that her in-laws' attitude since she was pregnant was generally negative the entire period and that it had been communicated to her that their view was her pregnancy was intentional as a method of "catching" their son. She was born on October 4, 1969. She described her employment while in Bangor and the "pushing and shoving" between the husband and wife during the marriage. She attributed the breakdown of the marriage to both of the parties. She described herself as a good mother who loves the two children and acknowledged that the plaintiff was a good father but that he was not flexible in terms of scheduling. She testified that she would be willing to accept the recommendations of the Family Relations Unit of the Superior Court with regard to joint custody and visitation and would be willing to be flexible with scheduling. On questioning by the attorney for the minor children, the defendant acknowledged having gone to South Carolina to seek employment. She has a relationship with a man there. She acknowledged having checked into schools there and indicated that she might attend community college when she gets there.
On cross examination, the defendant described her family in the State of Maine and acknowledged that she has no relatives in South Carolina. She testified that the two children have good relationships with her parents but they see them less than once a month. She acknowledged that the children have good a relationship with their father. The defendant showed a high level of intelligence in her manner of answering questions and appeared to the Court to be forthright and sincere.
The plaintiff offered as an exhibit records relating to insurance claims itemizing his claim that under a pendente lite order for the division of the unreimbursed medical expenses he should be paid $371.85.
The defendant offered as an exhibit the Family Relations report of Sharon Kesten, completed 4/14/92 (Defendant's Exhibit 1).
Sharon Kesten was called as a witness by the defendant. She testified that she had been a Family Relations counselor for four-and-a-half years and explained to the Court her qualifications for that employment. She estimated that she had previously completed 75 to 100 evaluation, in connection with that employment. She explained how she completed the evaluation and how she CT Page 6571 determined which of the various individuals she determined were appropriate to consult in connection with the preparation of her report. She acknowledged she had not spoken with the paternal grandparents. She testified that she contacted the parents and some of the persons to whom she was referred by the parents including three physicians, a therapist, the nursery school, an aunt and a friend. Her report describes the living conditions of both of the parents and the facilities available for the children living with their mother in Maine.
Her report outlines the educational background and employment of the plaintiff and describes information provided to her by both of the parties. She describes in her report that the mother, being now 22 years of age, received her high school equivalency (GED) after the birth of Ericka and has had some employment as described in the report.
In her report and her testimony, the Family Relations counselor recommended that the parties have joint custody of the minor children primarily because the counselor felt that "father continued to be involved in making the major decisions affecting Ericka and Gary" (Defendant's Exhibit 1, page 8).
The Court is require to consider the factors set forth in Section 46b-81 and Section 46b-82 of the Connecticut General Statutes which will be considered to the extent that they have been included in the evidence. In addition, the Court will consider the factors set forth in Section 46b-56
of the General Statutes relating to the custody and care of the minor children and in particular will be guided by the best interests of the children.
The parties have filed financial affidavits consistent with the rules of the court reflecting their income, expenses, assets and liabilities.
In addition, a family support guidelines worksheet was submitted with the "tentative obligations" of the parties if the defendant continues to be the custodial parent providing for the plaintiff to pay $194 a week for the support of the two children and for the defendant to have no contribution.
It is clear when reviewing the said factors that the length of the marriage was from May 27, 1989, but that the parties had a relationship prior to that which resulted in the birth of minor child, Ericka. The employability, education and the vocational skills, occupation and CT Page 6572 opportunity of each for the future acquisition of capital and income of the respective parties is considerably different in this case with the plaintiff husband having the higher level in each of these categories because of his college education and the continuous engineering employment history. On the other hand, the defendant has been employed in the past and subject to the needs of the children has the capacity to be employed in the future in similar respects. She describes a possibility of later educational advancements and shows to the Court in her presence and temperament, attitude and general intellectual level a real possibility of later advancement.
The financial affidavits of the parties fairly express their existing estate, their needs and their obligations.
The Court will also consider the appearance of the parties, the appearance of the witnesses, their demeanor and their attitudes as well as the interrelationship of the various orders in formulating appropriate orders for this case. The Court will consider the capacity of the defendant to be employed.
The Court found the plaintiff to be relatively intransigent and inflexible in his attitudes and approach to life in general and in particular that the plaintiff appeared to the Court to be less than forthright in answering questions as indicated above.
The parties spent considerable time during the trial on issues relating to the cause of the breakdown of the marriage. That is one of the factors which must be considered by the Court; however, trial courts have been often reminded that this is only one of several factors and it may not be overemphasized in formulating the orders of the Court. In this case, the Court is inclined to accept the evaluation of the defendant that the cause of the breakdown of the marriage is attributable in part to each of the parties. The lack of the ability of the parties to communicate with regard to their differences and the exacerbation of those differences as time passed seems to the Court to have contributed to the breakdown of the marriage. Accordingly, the Court will treat that factor as a neutral factor in evaluating the appropriateness of the orders in this case.
At the termination of the hearing day on May 8, 1992, the question presented itself as to whether the parties had completed their questioning and the presentation of CT Page 6573 evidence in such a way that the Court offered the parties an opportunity for a further assignment if they considered same were necessary. The parties, however, have each filed waivers with regard to any further presentation of evidence and the right to further oral argument as on file appears. The attorneys in lieu of oral argument have provided written proposed orders which have been carefully reviewed and evaluated by the Court.
The plaintiff's proposed orders, dated May 13, 1992, suggest joint custody of the minor children with primary custody to be with the father. Visitation rights are suggested and arguments are advanced on behalf of medical insurance, transportation and certain other financial matters. The plaintiff under those circumstances proposes no support payments and no alimony payments.
The defendant's proposed orders, dated May 14, 1992, argue that the joint custody should provide for her to be the primary caretaker and she proposes certain visitation arrangements. In addition, she has suggested support payments in the amount of $170 per week which are less than that provided by the guidelines because of unspecified travel expenses and, further, makes provision for insurance, income tax exemptions, alimony and allowance to prosecute, life insurance and certain other financial matters.
The attorney for the minor children submitted proposed orders on May 12, 1992, suggesting, with respect to the children, that the custody be joint with the mother being the primary caretaker and certain recommendations with regard to visitation. The attorney for the children suggests the use of the guidelines for the support order and certain additional orders relating to insurance and taxes.
The Court will consider carefully the arguments advanced by the attorneys in their respective claims.
It appears to the Court that the evidence was fully developed by the parties and their attorneys and that the Court has complete information upon which to make a determination of the issues in this case. The Court extends its appreciation to the attorneys for their careful and professional presentation of the evidence and arguments.
The Court finds from the evidence that the marriage has broken down irretrievably, and on that basis, a decree of dissolution is entered. Custody of the minor children, Ericka and Gary, are awarded jointly to the parties, with the primary residence to be with the defendant mother. The CT Page 6574 plaintiff shall enjoy rights of reasonable visitation to include alternate weekends until the defendant moves with the children out of New England. Thereafter, if and after the defendant moves out of New England, the plaintiff shall have visitation for eight weeks in the summer and during all school-year vacations of one week duration or more, provided that the plaintiff shall he responsible for the costs of transportation. In addition, the plaintiff shall have such additional visitation in the children's home state upon reasonable advance written notice to the defendant not less than 36 hours provided that no such visitation shall be permitted to interfere with the regularly scheduled school or extracurricular activities of the children.
Both parties shall have reasonable telephone access to the children when they are with the other party and both parties are ordered to provide current addresses and telephone numbers to the other (in writing by certified mail, return receipt requested) from time to time as their address or telephone number changes. In addition, each party shall inform the other of the location and telephone number at which the children may be reached when on vacation or otherwise away from their normal residence for any period exceeding two days.
The plaintiff is ordered to pay to the defendant directly child support in the amount of $170 per week or $85 per child per week. The Court makes a specific finding that a deviation from the guidelines is appropriate because of the travel expenses to be incurred by the plaintiff. These payments are to be by immediate wage execution. The plaintiff father shall be responsible to provide Blue Cross/Blue Shield or its equivalent available to him through his place of employment for the minor children. The provisions of Section 46b-84(c) shall apply. The parties shall divide equally any uncovered medical and dental expenses for the children. In addition to the statutory provisions provided above, it is ordered that the party who receives the bill for the uncovered medical or dental expenses shall forthwith provide a copy of the bill to the other party by certified mail return receipt requested, and the other party shall pay their one-half due within thirty days of the receipt of such bill, which payment shall be directly to the medical provider. Any insurance checks which represent reimbursement for items paid in advance by either party shall be forwarded forthwith upon receipt to the party who made the payment.
The plaintiff shall he entitled to the tax exemption for the minor son, Gary, and the defendant mother shall be entitled to claim the income tax exemption for the CT Page 6575 daughter, Ericka.
The plaintiff father is ordered to return the original birth certificate for Ericka to the defendant mother forthwith.
The plaintiff father shall pay to the defendant mother lump sum alimony in the amount of $3,000 provided that there shall be deducted therefrom the amount of $371, which the Court finds is the defendant's share of outstanding unreimbursed medical bills of the minor children. This amount shall he paid in payments as follows:
 $500 in 90 days from this date $500 in 180 days from this date $500 in 270 days from this date Balance in 365 days from this date
In addition, the plaintiff shall pay to the defendant as an allowance to defend the sum of $500 within sixty days.
The attorney for the minor children is awarded a reasonable attorney's fee in the amount of $1,400, and it is ordered to be paid by the parties with the plaintiff being responsible for 60 percent and the defendant being responsible for 40 percent. Said payments to be made within thirty days.
The plaintiff shall hold the $200 face value savings bonds in his possession and the defendant shall hold the $600 savings bonds in her possession in trust for the benefit of the minor children to be delivered to them upon their attaining the age of 18 years.
No periodic alimony is awarded in favor of either party. The plaintiff is ordered to maintain the existing life insurance available to him through his place of employment with the two minor children as irrevocable beneficiaries thereon until the youngest reaches the age of 18, with the defendant named as trustee for the children. The plaintiff shall at least annually provide the defendant with written proof signed by the employer or insurer as to the existence of the insurance and the beneficiary designation.
Leuba, J. CT Page 6576